## ALBERT RUSSELL, Trustee, v. THE CITY OF PROVIDENCE.

A soldier, who has enlisted and been mustered into the volunteer service of the United States for three years or the war, subsequent to the passage of the resolutions of the City Council of the City of Providence, passed on the 15th day of September, 1862, " for the relief of the families and dependents of volunteers and drafted soldiers," cannot, although counted as one of the city's quota under the President's call of July 2d, 1862, for 300,000 men, maintain an action, as trustee for his family and dependents, against the city, for the relief contemplated by the resolutions, upon the ground of a contract thereby created between himself and the city for such relief; the appropriation made by the resolutions being in the nature of a charity, the distribution of which is to be governed by the will of those who established it, and the decision of the committee of relief created by the resolutions being final as to all applications for aid under them.

ASSUMPSIT by the plaintiff, as trustee for his family and dependents, to recover the sum of four dollars per week, from the fourth day of November, 1862,—when he was, under the call of the President of the United States of the date of July 2d, 1862, mustered into the volunteer service of the United States as one of the quota of the City of Providence,—to the 27th day of July, 1863, the date of the writ. The plaintiff's demand rested upon certain resolutions of the City Council of the City of Providence, passed on the 15th day of September, 1862, offering to pay four dollars per week to the families and dependents of those men who might thereafter enlist for three years or the war, and who should be accepted, as a part of the city's quota of the three hundred thousand men called for by the President on the second day of

July, 1862, which offer the plaintiff claimed that he had accepted by enlisting and being mustered into the Hospital Guard of the United States Lovell Hospital, at Portsmouth, R. I.,—commonly called the Portsmouth Hospital,—and continuing in that service.

The case was submitted to the court, under the general issue, at the present term, both in law and fact, when it was proved, that on the said 15th day of September, 1862, the City Council of the City of Providence passed the resolutions, and on the 22d day of September, 1862, the additional resolution, as follows :—

" *Resolutions passed by the City Council, September 15, 1862, for the relief of the families and dependents of volunteers and drafted soldiers.*

"I. APPROPRIATION OF $100,000. *Resolved,* That the city treasurer, acting under the advice and the direction of the standing committee on finance, be and he is hereby authorized and instructed to borrow, either by issuing bonds or otherwise, the sum of one hundred thousand dollars, and that said sum be and the same is hereby appropriated for the aid and relief of the families and dependents of those men, who have been, or who may hereafter be mustered into the volunteer service of the United States, for three years, for nine months, or for the war, belonging to or having their residence in the City of Providence at the time of their enlistment; also, for the aid and relief of the families and dependents of those men belonging to, or having their residence in, Providence, who may hereafter be drafted into the service of the United States.

"II. MODE OF PAYMENT. *Resolved,* That the aforesaid appropriation of one hundred thousand dollars be applied in the following sums and manner, viz. :—

" *First class.* To the families and dependents of those men who have enlisted for three years or the war, consisting of a wife, a child, or a single dependent, the sum of two dollars per week. To the families and dependents as aforesaid, consisting of a wife and child, two children, or two dependents, the sum of three dollars per week. To the families and dependents as aforesaid, consisting of a wife and two children, three or more children, or three or more dependents, the sum of four dollars per week.

Russell, trustee, *v.* The City of Providence.

"*Second class.* To the families and dependents of those men who may hereafter enlist for three years or the war, and who shall be accepted *as a part of the city's quota of the three hundred thousand men called for by the President of the United States, July 2d,* 1862, the sum of four dollars per week. To the families and dependents of those men who have enlisted, or who may hereafter enlist for the nine months service and who shall be accepted as a part of the city's quota, the sum of four dollars per week during said service. The families and dependents of sick or wounded soldiers, or of those who have died, or who may die in the service, not to be excluded from the benefit of the foregoing provisions. Families already provided for by the bounties offered by the City Council, on the 25th of August, 1862,* not to be included in the foregoing provisions.

"III. COMMITTEE OF RELIEF. *Resolved,* That Messrs. Guild, Cross, Washburn, Curry, Barker, Payton, and Field, and Alderman Paine, be, and they are, hereby appointed a committee of relief, authorized and empowered to hire an office-room and furnish the same at the city's expense, to decide upon all applications for relief, to adopt rules and regulations for the effectual carrying out of the provisions of the foregoing resolutions, and in general to have the oversight and management of the business pertaining to the aid and relief of the families and dependents of volunteers and drafted soldiers.

"IV. RELIEF CLERK. *Resolved,* That the aforesaid relief

---

* "The following are the resolutions to which reference is here made:—

"*Resolved,* That the city treasurer be and he is hereby directed to pay to each volunteer who shall enlist for the three years service, on or before the first day of September next, a bounty of one hundred dollars, said bounty to be paid immediately after he shall have been accepted by the military authorities of the United States, as a part of the city's quota of the three hundred thousand volunteers called for by the President of the United States, on the second day of July, 1862; also, that the sum of twenty-five dollars per month be paid on his order, to his family, if he has a family, and if not, to his own order, during the first twelve months of his service, provided that he do not, in the meanwhile, desert or be dishonorably discharged.

"*Resolved,* That the city treasurer be, and he is hereby directed to pay, on the order of each nine months volunteer or drafted soldier, to his family, if he has a family, and if not, to his own order, during said nine months service, the sum of twenty-five dollars per month, provided he do not, in the meanwhile, desert or be dishonorably discharged."

Russell, trustee, v. The City of Providence.

committee be, and they are hereby, authorized and empowered to appoint a relief clerk, whose duty it shall be, acting under the advice and direction of said committee, to keep a complete roll book of all volunteers and drafted soldiers belonging to Providence, with the dates of enlistments or draft, together with all the information that can be procured for identification ; to receive all applications for relief, furnishing blanks to applicants, and assisting them in making their petitions ; to pay out the weekly sums authorized as aforesaid, keeping correct accounts thereof in books provided for this purpose ; and in general to perform such duties as may be assigned him, from time to time, by the said committee. He shall make a monthly return to the City Council, stating the amount of his receipts and disbursements. For the faithful performance of his duties, he shall be required to give bonds to the amount of twenty-five hundred dollars, satisfactory to the standing committee on finance.

" V. MODE OF DRAWING FUNDS. *Resolved*, That the aforesaid appropriation for the aid and relief of the families of volunteers shall be subject only to the draft of the chairman of said relief committee, countersigned by the mayor ; and said chairman is hereby authorized and directed to draw, from time to time, upon the city treasurer, for such amounts as may be required for the weekly disbursements of the aforesaid relief clerk.

" VI. COMPENSATION OF RELIEF CLERK. *Resolved*, That the aforesaid relief clerk be allowed for his services a compensation of sixty dollars per month, said compensation to commence from this date, September 15th ; and that the same, together with the necessary expenses of rent, printing, stationery, &c., be paid out of the aforesaid appropriation for the relief of the families of volunteers.

" VII. *Resolved*, That the foregoing resolutions take effect on and after the first day of October, 1862.

" A true copy ; witness,

" SAMUEL W. BROWN, *City Clerk*."

"*Additional resolution, passed September* 22, 1862.

" Whereas, by the resolutions of the City Council, passed September 15th, 1862, provision was made, among other things,

for the assistance of the families and dependents of such persons as should be, after such time, enlisted from this city in the service of the United States, for the term of three years, and for the assistance of the families and dependents of such persons as had been or should be enlisted for the nine months call, recently made by the President of the United States; and, whereas, it was the intention of the council, that the families and dependents of persons as aforesaid, forming a part of the city's quotas, should be assisted to the extent of four dollars per week, during such terms of service, wherever such families or dependents may reside; therefore,

"*Resolved*, That the relief committee be, and they are hereby, authorized and instructed to pay to the families and dependents of the classes above named in the foregoing preamble, the sum of four dollars per week during their term of service, (provided they do not, in the meantime, desert or be dishonorably discharged,) wherever the families and dependents of such persons may reside at the time of such enlistment.

" A true copy; witness,

"SAMUEL W. BROWN, *City Clerk.*"

On the 4th day of November, 1862, the plaintiff enlisted, and was mustered into the service of the United States, for the special duty of a guard at the Portsmouth Grove Hospital,—a duty created by orders from the War Department, dated October 4th, 1862,—and was reckoned as one of the quota of the City of Providence, in the call of the President of the United States for 300,000 men, dated July 2d, 1862. He remained in that service at the time of the bringing of the action. At the time of his enlistment, he was unmarried, but had a sister dependent upon him for support, who continued thus dependent until the month of February, 1863, when she married. He himself was married on the 28th day of March, 1863. It was agreed that the plaintiff had applied for aid under the above resolutions, and that his application had been rejected.

At a special session of the General Assembly, held on the 26th day of August, 1862, the following act was passed:—

"*An Act in addition to Title VII., Chapter 30, of the Revised Statutes, 'Of the powers of, and of suits by and against, towns.'*

"*It is enacted by the General Assembly as follows:—*

" SECTION 1.   Hereafter the several towns are authorized to appropriate and raise money for the purpose of rendering assistance to the families and dependents of those who may be mustered into the service of the United States from this State, to serve under any of the calls which have been heretofore made, or which may hereafter be made, upon this State, by the President of the United States, to an amount not exceeding four dollars per week to the family of any one man.

" SEC. 2.   Nothing in the preceding section contained shall be construed to affect any contract to render aid to his family, which has heretofore been made by any town with any person, who, before the passage of this act, has enlisted in the service of the United States.

" SEC. 3.   The act passed at the August session, A. D. 1861, being Chapter 389 of the Revised Statutes, is hereby repealed."

*Thurston & Ripley, for the plaintiff.*

*B. N. Lapham, City Solicitor, for the defendant.*

BULLOCK, J.   The *first* resolution of the City Council appropriates the sum of one hundred thousand dollars, for the *aid* and *relief* of the families and dependents of those belonging to, or or residing in, the City of Providence, who have volunteered, or may volunteer, or be *drafted* and mustered into the military service of the United States.   The *second* resolution relates to the application of this appropriation, as to *amounts* and time of distribution.   The recipients of this *aid* and *relief* are classified.   The *first class* embraces the families and dependents of such as were, *at the time* of the passage of the resolutions, in this service, as a part of the city's quota.   The *second* class includes the families and dependents of those who, *after* the passage of the resolutions, may enlist and be mustered in as a part of the same quota.   This resolution extends the aid and relief to the families and dependents of *sick* and *wounded* soldiers, and also of those who *have died* or may *die* in the service.   The *third* resolution

provides the means and agencies by which, and declares the manner in which, the appropriation shall be expended. For this end, it raises a committee, designated a "committee of relief;" names the individuals who are to constitute it; provides that this committee shall manage and oversee the extending of *aid* and *relief* to the families and dependents of *drafted men* as well as of volunteers; authorizes the committee to make all needful regulations to carry the resolutions into effect; and declares that they shall *decide* upon *all* applications made to them for aid. By an *additional* resolution, this committee are instructed to render assistance to the families and dependents of soldiers, forming a part of the city's quota, who may not live, or have their residence, in the city.

The plaintiff enlisted on the 4th day of November, 1862, and was mustered into the service for a *special* duty, namely, to serve as a guard at the Portsmouth Grove Hospital. This special service was *created* under orders from the War Department, of the date of October 4th, 1862, subsequent to the passage of the resolutions, and prior to the enlistment of the plaintiff. The plaintiff *counted* as one of the city's complement or proportion to make up the State's *quota* of the three hundred thousand men called for by the President of the United States, on the second day of July, 1862; and he remained in this service at the time this action was brought. The plaintiff testified that, at the time of his enlistment, he was unmarried, but then had a sister dependent upon him for support, who remained thus dependent until her marriage, in the month of February, 1863; and that he was married on the 28th day March, 1863. No question was made, that the plaintiff had not duly applied for aid, under these resolutions, and that his application had been rejected.

Upon these facts, is the plaintiff entitled to recover? This depends upon the question, whether this action by the city, upon the one part, and the enlistment of the plaintiff, upon the other part, constitute, as between them, a *contract*. The plaintiff claims, as one entitled under what is designated as the *second class*, that the resolutions, by their own terms, absolutely and specifically appropriate and pledge to him, for the use of his family, and to all who, like him, enlist for three years and are

accepted as a part of the city quota, the sum of four dollars per week ; that the resolutions are in the nature of a proposal for his services, which proposal he has accepted ; that, like his regular pay, it formed an inducement for him to enlist ; and that, having accepted the proposal, he acquired a *vested* right in the sum appropriated which the city cannot impair or take away.   On the other hand, it is said, this appropriation was a mere *gratuity*, or *voluntary* contribution, made by the city to aid and relieve the needy wives, children, or dependents of soldiers, and their widows and orphan children ; and this, without reference to *when* they entered the service, or whether as volunteers or drafted men, so long as such soldiers formed a part of the city quota ;—a *charity* which the donors may, in their discretion, bestow or withhold ; but, at the same time, intended to encourage enlistments so far as the free offer of a partial and temporary support might induce men of families, and of no means or of small means, to enlist.

It is a plain rule, that every part of these resolutions claimed as the evidence of a *contract* shall be construed together, and so, if possible, as to give effect to the whole instrument.   It is true, the resolutions speak of "*families*," and nowhere, in terms, speak of *needy* families ; and, that the appropriation is to be applied to these families in fixed sums, and at stated intervals.   But it is equally true, that the appropriation is avowedly one of "*aid* and *relief*," and that in every case where the aid and relief is extended to *families*, it is also extended to *dependents*.   Neither can we overlook the fact, that the first and most important of the whole series of resolutions,—that which provides the *fund*,—expressly extends this aid and relief not only to the families of those who *may* enlist, but to the families of men *already* in the service, or who, by draft, may be compelled to enter it.   In this respect, the three classes are placed upon the same footing.   No exclusive proposal or inducement is offered to the one class, more than to the other.   If, therefore, the city binds itself to pay to this plaintiff, for his family, the sum of four dollars weekly, by the same act, and in the same terms, it bound itself, as well, to every man then in the service, or to be drafted into the service as a part of its quota.   The fact, that no class is excluded from this aid, indi-

cates that the action of the city was dictated in no spirit of a bargain, or of compensation for services, but in the spirit of a charity, comprehensive enough to reach and relieve the wants of every wife and child, wherever they might reside, whose husband or father had been, or might be, either by choice or necessity, removed to a distant and hazardous service.

If the resolutions are, in effect, a contract between the city and the plaintiff, and every soldier who forms or may form a part of its quota, then we have, under a limited appropriation, a liability and expenditure without any limit, either in time or amount; since the family of the living soldier may claim, so long as he remains in the service, and the widow and child of the deceased soldier, without any limitation as to time. If a contract is shown, and there be no doubt about its terms, and it be one possible to be executed, then the consequences, whatever they be, are with the contracting party ; but when the existence even of the alleged contract is denied, or its terms are ambiguous, the instrument claimed to embody and evidence the contract, and all of its provisions, should be viewed in the light of the attendant circumstances. We are not to infer that the municipal authorities of the city imposed so great a burden upon its treasury.

The resolutions do not propose to pay or compensate the soldier for service, or to grant him a bounty, as a condition of enlistment, but to extend aid and relief to his family or dependents. The terms, " aid and relief," imply want, need, or necessity on the part of the applicant. The resolutions contemplate the making of rules to regulate and govern the expenditure of the appropriation. These rules the committee of relief are empowered to make. Under them, claimants must make application, and prove that they are of the general class intended to be benefited or aided. If the applicant is a mother, she must show not this fact alone, but that she is dependent upon her son for support. After this preliminary evidence has been submitted, the committee of relief are to follow it up, by enquiries instituted by themselves, to ascertain not only whether the applicant is the wife, or child, of a soldier, but, also, whether such wife or child is needy, and so entitled to relief. This committee, designated by name, and selected, no doubt, for their fitness, are to decide upon all appli-

cations for relief. One of the conditions upon which the appropriation is made, and upon which any portion of it can be expended, is, that this committee shall first decide that the applicant requires aid. There would be neither charity or justice in taxing the citizens of small means for the purpose of bestowing a *modicum*, in the form of a charity, upon those whose means may be more ample; and yet, if the resolutions are obligatory, in the sense of a debt, then it is a debt due to the wives and children of all in the service as a part of the city's quota, irrespective of their condition as to property.

It was said, that the city adopted this as a mode of hiring men, to avoid a draft. But the resolutions contemplate the contingency of a draft, and extend relief as well to the families of drafted men as of volunteers.

Again, the City of Providence, as a municipality, had no power to hire soldiers, no interest nor duty to prevent a draft, and no right to appropriate money to either of these purposes. Not only was it not thus authorized, but was impliedly prohibited from so doing by an act of the General Assembly, passed at its special session of August 26th, 1862.

The appropriation being an appropriation in the nature of a charity, its distribution is to be governed by the will of those who create or establish it. If, therefore, the accredited agents of the city do not deem the family or dependents of the plaintiff as falling within the class of persons upon whom this charity is to be bestowed, we are not at liberty to reverse their action. The power to decide upon all applications for aid and relief is vested in the committee of relief, and their decision is final.

Without considering any other points made in the case, we must, for these reasons, order judgment to be entered for the defendant for costs.